**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LUIS F.D.L.,

Petitioner,

v.

TODD BLANCHE, *U.S. Attorney General*;

MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*;

DAVID VENTURELLA, *Acting Director, Immigration and Customs Enforcement*;

DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*;

ERIC TOLLEFSON, *Kandiyohi County Sheriff*,

Respondents.

Civil No. 26-4782 (JRT/ECW)

**MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Cameron Giebink, **WILSON LAW GROUP**, 3019 Minnehaha Avenue, Minneapolis, MN 55406, for Petitioner.

David W. Fuller and Derek Ganzhorn, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

Petitioner Luis F.D.L. is a citizen of Venezuela and a resident of Grand Forks, North Dakota, who is currently in Immigration and Customs Enforcement ("ICE") custody in Minnesota. On November 11, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus

alleging that his arrest and continued detention violate the Immigration and Nationality Act and its accompanying regulations, the *Accardi* Doctrine, the Fourth and Fifth Amendments of the U.S. Constitution, and the Administrative Procedure Act.

The Court concludes that Respondents did not execute a lawful warrantless arrest.[1] Consequently, the Court will grant the petition and order Petitioner's immediate release.

## BACKGROUND

### I. FACTS

Petitioner is a citizen of Venezuela who applied for entry into the United States via the Customs and Border Patrol (CBP) One app. (Pet. Writ of Habeas Corpus ("Pet.") ¶¶ 11, 27, Oct. 9, 2026, Docket No. 1.) On August 25, 2024, the same day as his arrival in the United States, CBP paroled Petitioner into the United States and the Department of Homeland Security (DHS), issued a Notice to Appear, and placed him in removal proceedings. (*Id.* ¶¶ 27–29; Decl. of Dustin J. Plummer ("Plummer Decl.") ¶ 4, Ex. C at 1, Nov. 18, 2026, Docket No. 6.) Petitioner's parole was valid through August 24, 2026. (Pet. ¶ 27.) After he arrived, Petitioner filed an application for asylum, which is still pending. (*Id.* ¶¶ 30, 36.) He has repeatedly—and always timely—checked in with U.S. Immigration and Customs Enforcement (ICE). (*Id.* ¶ 32 & Ex. D.) Petitioner has resided in the United

[1] Because the Court concludes that Luis F.D.L.'s arrest was unlawful and he is entitled to release on that ground, it will not address the other grounds on which Petitioner requested relief.

States continuously since his arrival, has a stable home address, and is employed with Ye Ol Painters in Grand Forks pursuant to a lawful Employment Authorization Document. (*Id.* ¶¶ 31, 34, 129.) He has no known criminal history. (*Id.* ¶ 35 & Ex. E.)

On November 2, 2026, a Grand Forks law enforcement officer conducted a traffic stop. (Plummer Decl. ¶ 4, Ex. A. at 2, Nov. 18, 2026, Docket No. 6.) The officer ran a records check and learned that the stopped car was registered to Petitioner, and that Petitioner was "previously determined to being illegally present in the United States." (*Id.*) A Supervisory Border Patrol Agent then arrived at the traffic stop. (*Id.*) The agent verified Petitioner's identity, informed Petitioner that he was under arrest for immigration violations, placed him in handcuffs, and transported him to the ICE office in Grand Forks, North Dakota. (*Id.*; Pet. ¶ 41.) Only after he arrived at the ICE office was Petitioner served an I-200 administrative warrant. (Plummer Decl. ¶ 4, Ex. A. at 2.) Respondents assert that Petitioner was not served the I-200 administrative warrant "on scene" immediately upon his arrest because of "heavy traffic in the area." (*Id.*) Petitioner was transferred to the Grand Forks County Jail and then to the Kandiyohi County Jail in Minnesota, where he remains. (Pet. ¶¶ 46, 51.)

## II. PROCEDURAL HISTORY

On November 11, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus, contending that his arrest and continued detention are unlawful under the Immigration and Nationality Act and its accompanying regulations, the *Accardi* Doctrine,

the Fourth and Fifth Amendments of the U.S. Constitution, and the Administrative Procedure Act. (Pet. ¶¶ 93–138.)

The Court directed Respondents to file a reasoned memorandum responding to Petitioner's claims. (Docket No. 4.) Respondents[2] timely filed a response, and Petitioner timely replied. (Docket Nos. 5, 7.)

## DISCUSSION

### I. STANDARD OF REVIEW

"[A]bsent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2). District courts can provide habeas relief to persons detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3).

### II. ANALYSIS

Respondents acknowledge that the Supervisory Border Patrol Agent arrested Petitioner without a warrant.[3] But, Respondents argue, the arrest nevertheless satisfied the warrantless arrest requirements in 8 U.S.C. § 1357(a)(2) and, thus, Petitioner's

---

[2] "Respondents" here includes only Federal Respondents, as no response was submitted on behalf of Kandiyohi County Sheriff Eric Tollefson.

[3] Because Respondents acknowledge that there was a warrantless arrest, the Court does not further consider Petitioner's arguments related to the insufficiency of the Form I-200 warrant.

detention is lawful and mandatory under 8 U.S.C. § 1225(b)(2). Under 8 U.S.C. § 1357(a)(2), an immigration officer may "arrest any [noncitizen] in the United States" without a warrant only "if [the officer] has reason to believe that the [noncitizen] . . . is in the United States in violation of any such law or regulation **and** is likely to escape before a warrant can be obtained for his arrest . . . ." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted "reason to believe" to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). For similar reasons to those in *Ivan F.M. v. Blanche*, Civ. No. 26-4012, 2026 WL 2935475 (D. Minn. Sept. 30, 2026), and as further explained below, the Court concludes that Respondents did not make a valid warrantless arrest.

**A. Warrantless Arrest**

The Court will assume that there was reason to believe Petitioner was in violation of immigration laws when ICE officers arrested him. The records submitted by Respondents indicate that the records check of Petitioner's license plate during the traffic stop provided reasonable suspicion that Petitioner was in the United States in violation of the immigration laws.

But this same records check is among the myriad reasons why the Court concludes that there was not probable cause to believe Petitioner would escape before a warrant could be obtained for his arrest. "[T]he inquiry into whether a person is likely to evade immigration officers considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement

would be able to arrest the noncitizen at another clearly identifiable location." *Ivan F.M.*, 2026 WL 2935475, at *3 (citations and internal quotation marks omitted). Even if Petitioner's presence inside an operable car suggests that Petitioner may not be at the scene of the encounter by the time Respondents were able to obtain a warrant, the associated address from the record check means that an immigration enforcement officer would likely be able to arrest Petitioner at another clearly identifiable location. Additionally, the Form I-213 Record for Petitioner lists an associated address in Grand Forks, North Dakota. The record provides no indication that ICE officers would have been unable to locate Petitioner after obtaining a warrant to arrest him.

Respondents also suggest that Petitioner was likely to escape because he was in the country without lawful immigration status. But immigration status does not in and of itself present a likelihood of escape. "To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one . . . ." *Francisco M.A. v. Blanche*, Civ. No. 26-2032, 2026 WL 1229701, at *3 (D. Minn. May 5, 2026). Additionally, Petitioner attended every one of his seven prior scheduled check-ins with ICE, which does not evince an intent to escape law enforcement. In short, neither his presence in a car nor his immigration status make it likely that Petitioner would escape before a lawful warrant could be obtained and executed, especially given that Petitioner had been living in the United States since 2024, and was working and had a stable home address in North Dakota.

Because Respondents have not shown that Petitioner was likely to escape, they failed to comply with the requirements for arresting a noncitizen without a warrant in 8 U.S.C. § 1357. Respondents therefore also improperly arrested and detained Petitioner under 8 U.S.C. § 1225(b)(2).[4]

**B. Remedy**

When ICE fails to comply with federal immigration law when arresting and detaining a petitioner, release is the proper remedy. *See, e.g.*, *Hector J.A.S. v. Shea*, Civ No. 26-2242, 2026 WL 1243500, at *3 (D. Minn. May 6, 2026); *Ivan F.M.*, 2026 WL 2935475, at *3; *cf. Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . . The typical remedy for such detention is, of course, release."). The Court will, therefore, order Petitioner's immediate release.

In addition to ordering Petitioner's release, the Court will also impose additional conditions to provide an effective remedy. Habeas corpus "is, at its core, an equitable remedy." *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). The adaptable remedy allows a reviewing court, after proper consideration, to "dispose of the matter as law and justice require." *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243). While immediate release is the typical remedy for unlawful detention, *Munaf*, 553 U.S. at 693, "[a] habeas court is thus authorized to

---

[4] In reaching these conclusions, the Court offers no view on Petitioner's claims under the *Accardi Doctrine*, Administrative Procedure Act, nor United States Constitution.

'fashion appropriate relief other than immediate release' . . . in order to ensure an effective remedy for unlawful detention," *Diallo v. Scott*, Civ. No. 26-975, 2026 WL 1843102, at *8 (W.D. Wash. June 26, 2026) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)).

Specifically, before re-detaining Petitioner, the Court will order that Respondents must first provide him with adequate notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the Respondents will bear the burden of establishing that detention is appropriate by clear and convincing evidence. The Court finds that a pre-deprivation hearing is necessary relief in light of Respondents' recent practice of immediately re-detaining successful Habeas petitioners that a court—including this one—has ordered released.[5]

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Luis F.D.L.'s Verified Petition for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED** as follows:

1. Respondents shall **RELEASE** Petitioner from custody as soon as practicable and **no later than 48 hours from the filing of this Order**.

---

[5] *See, e.g.*, *Cornelio S.R. v. Blanche*, Civ. No. 26-4675, 2026 WL 3521190, at *3 n.2 (collecting cases and media reports of re-detention).

a. Respondents shall coordinate with Petitioner's counsel regarding the time and location of release.

b. Respondents must release Petitioner with all personal effects, such as driver's licenses, passports, or immigration documents, and **without conditions** such as location tracking devices.

2. Respondents **SHALL NOT** re-detain Petitioner without providing him with adequate notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

3. The parties shall provide the court with a status update concerning the status of Petitioner's release by **no later than 4:00 p.m. on November 23, 2026**.

DATED: November 20, 2026
at Minneapolis, Minnesota

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge